**No. 2025-2092**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

JAMES STOKES
*Appellant*,

v.

MARKEL AMERICAN INSURANCE CORPORATION
*Appellee*.

---

On Appeal from the United States District Court
for the District of Delaware

Case No. 1:19-cv-02014-SB-MPT

LT. No. CACE22-005955

---

## APPELLANT'S OPENING BRIEF

---

Dated: December 15, 2025

*Of Counsel*:

John Wynn
(admission *pro hac vice* forthcoming)
**NEBLETT LAW GROUP**
2550 S. Bayshore Dr., Suite 211
Miami, FL 33133
(305) 456-0445
jack@neblettlaw.com

Stephen B. Brauerman (#4952)
**BAYARD, P.A.**
600 N. King St., Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Counsel for Appellant*
*James Stokes*

# TABLE OF CONTENTS

I. Jurisdictional Statement .................................................................................1

II. Statement of the Issues ..................................................................................1

III. Statement of Related Cases ...........................................................................2

IV. Statement of the Case ....................................................................................2

    A. The Nature of the Parties' Dispute Giving Rise to the Trial Court
       Litigation and Procedural History .......................................................2

    B. Rulings Presented for Review .............................................................3

V. Summary of the Argument..............................................................................4

VI. Argument ......................................................................................................5

    A. The Trial Court Erred in Ruling That The D.C. Code Does Not
       Recognize A Claim For Breach of Implied Covenant of Good Faith
       and Fair Dealing ...................................................................................5

         1. Standard of Review..................................................................5

         2. Argument.................................................................................5

            i. The Trial Court Erred in Dismissing Count IV ...............5

               a. District of Columbia Law Recognizes a
                  Cause of Action for the Implied Covenant of
                  Good Faith and Fair Dealing...................................5

               b. The Trial Court Later Foreclosed Mr. Stokes
                  from Seeking in his Breach Action the
                  Damages that Would Have Flowed from the
                  Breach of Implied Covenant, Confirming
                  That the Breach of the Implied Covenant
                  Cause of Action Was Properly Brought by Mr.
                  Stokes ...................................................................8

ii.    The Trial Court Erred in Dismissing Count III for Conversion ................................................................19

        a.    The Factual Basis of Dismissal Included That The Vessel Was a Total Loss, This Fact Remained Contested Until Markel Finally Stipulated to Total Loss Shortly Before Trial ......19

        b.    Dismissal Also Relied on The Finding That Mr. Stokes Could Pursue His Conversion Damages in the Breach Action; However, at Trial the Trial Court Limited Mr. Stokes' Damages to Only the Value of the Insured Vessel ................................................................23

    iii.    Mr. Stokes Contests Dismissal with Prejudice of Counts of His Amended Complaint ................................24

B.    Mr. Stokes Seeks Reversal of the Trial Court's Award of Pre-Judgment Interest ................................................................27

    1.    Standard of Review ................................................................27

    2.    Argument ................................................................27

VII.    Conclusion ................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelrhman v. Ackerman*,
   76 A.3d 883 (D.C. 2014) ..................................................................6

*Allen v. Yates*,
   870 A.2d 39 (D.C.2005) .................................................................14

*Allworth v. Howard University*,
   890 A.2d 194 (D.C. 2006) ...............................................................7

*Matter of Bankers Trust Co.*,
   658 F. 2d 103 (3d Cir. 1981) ....................................................27, 28

*Burks Companies, Inc. v. Howard Univ.*,
   No. CV 16-2312 (DLF), 2018 WL 4193640 (D.D.C. May 9, 2018) ................18

*C & E Services, Inc., v. Ashland Inc.*,
   601 F.Supp.2d 262 (D.D.C. 2009)......................................................6

*Cent. Armature Works, Inc. v. Am. Motorists Ins. Co.*,
   520 F.Supp. 283 (D.D.C.1981).........................................................14

*Choratis v. State Farm Fire & Casualty*,
   961 A.2d 1080 (D.C. 2008) .............................................................25

*Ciralsky v. C.I.A.*,
   355 F.3d 661 (D.C. Cir. 2004)....................................................26, 27

*Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977)...............................28

*Cont'l Ins. Co. v. Lynham*,
   293 A.2d 481 (D.C.1972) ....................................................12, 13, 14

*Fireman's Fund Ins. Co. v. CTIA*,
   480 F. Supp. 2d 7 (D.D.C. 2007)......................................................14

*In re Frescati Shipping Co.*,
   886 F. 3d 291 (3d Cir. 2018), *aff'd sub nom* ........................................27

*Grayson v. AT & T Corp.*,
  15 A.3d 219 (D.C. 2011) ...............................................................25, 26

*Jacobson v. Hofgard*,
  168 F. Supp. 3d 187 (D.D.C. 2016)....................................................7

*Levick v. Kiser*,
  206 F. Supp. 3d 337 (D.D.C. 2016)....................................................8

*Mawakana v. Board of Trustees of the University of the District of
  Columbia*,
  113 F. Supp. 3d 340 (D.D.C. 2015)....................................................7

*McTernan v. City of York, Penn.*,
  577 F.3d 521 (3d. Cir. 2009) .............................................................5

*Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*,
  No. CIV. 04-687 (RCL), 2006 WL 1147933 (D.D.C. Apr. 28,
  2006) ............................................................................................6, 18

*Wright v. Howard University*,
  60 A.3d 749 (D.C. 2013) ...................................................................6

**Statutes**

28 U.S.C. § 1332 ...................................................................................1

28 U.S.C. § 1332(a) ..............................................................................1

28 U.S.C. § 1404(a) ..............................................................................1

28 U.S.C. § 1441 ...................................................................................1

28 U.S.C. § 1446 ...................................................................................1

D.C. Code Section 28:1-304 ............................................................1, 5

D.C. Code Section 31-2231.17 ......................................................1, 24

D.C. Consumer Protection Procedures Act ................................1, 4, 24

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................24

Federal Rule of Civil Procedure 81(c) ....................................................................1

## I.    Jurisdictional Statement

Mr. Stokes initially brought suit against Appellee in Florida state court. (JA 26 ¶ 1.) Appellee removed the complaint to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § § 1332, 1441 and 1446, and Rule 81(c) of the Federal Rules of Civil Procedure. (JA 26.) The matter was then transferred to the United States District Court for the District of Delaware, over Mr. Stokes' objection, pursuant to an Order issued by the United States District Court for the Southern District of Florida, in reliance on 28 U.S.C. § 1404(a). (JA 138.)

The United States District Court for the District of Delaware (the "District Court" or the "Trial Court") maintained diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). This Court has jurisdiction over the instant matter as Mr. Stokes timely filed his Notice of Appeal (A1) following the Trial Court's ruling on Mr. Stokes' post-Judgment Motion. (A6).

## II.    Statement of the Issues

This Appeal presents two (2) core issues:

Issue One: Whether the Trial Court erred in dismissing Counts III (Conversion), Count IV (Breach of D.C. Code Section 28:1-304 The Implied Covenant of Good Faith & Fair Dealing), Count V (Breach of D.C. Code Section 31-2231.17 Unfair Claim Settlement Practices), Count VI (Breach of D.C. Code

Section 28-3904 The Consumer Protection Procedures Act), and Count VII (Fraudulent Inducement) of Mr. Stokes' Amended Complaint with prejudice.

Issue Two: Whether the Trial Court erred in determining the rate of pre-judgment interest to be awarded to Mr. Stokes following the jury verdict in his favor.

## III. Statement of Related Cases

This case has not been before this Court previously. Mr. Stokes is not aware of any related cases currently pending before this Court.

## IV. Statement of the Case

### A. The Nature of the Parties' Dispute Giving Rise to the Trial Court Litigation and Procedural History

Appellant, James Stokes, brought suit against Appellee, Markel American Insurance Company ("Markel" or "Appellee"), after Markel failed to pay for the sudden and accidental sinking of Mr. Stokes' vessel due to the torrential rains of Hurricane Michael. (JA36 ¶ 20.) Specifically, the litigation originated following a dispute between the parties whether the damage to the insured vessel, a 39' 2017 Midnight Express 39 OPEN 1881 HP (the "Vessel") with three (3) Seven Marine 627s engines, was a covered loss when it sank after Hurricane Michael dumped nearly 17 inches of rain on the Vessel between 10pm until 2am. (JA 532, ¶¶ 4, 5, and 15.)

Markel refused to make a coverage determination for more than 1000 days and Mr. Stokes asserted that Markel's failure to pay for the Vessel loss represented a

breach of the policy of insurance entered into between Mr. Stokes and Appellee. (JA531, ¶9.) Mr. Stokes alleged below that the replacement cost of the Vessel as of May 2022 "would be over one million dollars." (JA530-31, ¶ 5.)

Ultimately, this matter proceeded to a jury trial before the Trial Court and ended with a jury verdict for Mr. Stokes in the amount of $646,000.00. (JA642.) Prior to trial, the parties engaged in substantial motion practice, and germane to the present appeal, a motion to dismiss that was granted in part by the Trial Court. (A5.) Mr. Stokes seeks reversal of a portion of the Trial Court's order on the motion to dismiss.

After trial, Mr. Stokes moved for, and was granted, an award of pre-judgment interest. (A6.) Mr. Stokes seeks reversal of the Trial Court's determination that Mr. Stokes was due pre-judgment interest at the rate of 2.54% instead of the 7.75% Mr. Stokes sought. (A15 ¶ 1.)

## B.  Rulings Presented for Review

Appellee seeks review of the Trial Court's March 8, 2023, Order partially granting Appellee's Motion to Dismiss (A5) and the District Court's May 7, 2025, Order awarding Mr. Stokes prejudgment interest at a rate of 2.54% instead of 7.75%.  (A15, ¶ 1; A6.)

## V.     Summary of the Argument

The District Court erred in dismissing Counts III, IV, VI, and VII of the Amended Complaint with prejudice.

The District Court should not have dismissed Count III for Conversion. Mr. Stokes pled that he suffered damages separate and distinct from his breach of contract action. The Trial Court erred in dismissing Count III with prejudice, finding that that Mr. Stokes could pursue his Conversion damages within his breach action, before precluding Mr. Stokes from asserting those damages at Trial.

The District Court should not have dismissed Count IV for Breach of the Implied Covenant of Good Faith & Fair Dealing because the Trial Court erred in finding that D.C. law does not recognize a cause of action for Breach of the Implied Covenant.

Counts VI for Breach of the Consumer Protection Procedures Act and Count VII for Fraudulent Inducement should not have been dismissed *with* prejudice, to ensure the opportunity for a decision on the merits.

The District Court also abused its discretion in determining the rate of pre-judgment interest to award to Mr. Stokes. Mr. Stokes was awarded a 2.54% rate; however, his insurer withheld Mr. Stokes' funds during a time when the market provided for higher returns, in line with the 7.75% rate sought by Mr. Stokes under Delaware law.

## VI. Argument

### A. The Trial Court Erred in Ruling That The D.C. Code Does Not Recognize A Claim For Breach of Implied Covenant of Good Faith and Fair Dealing

#### 1. Standard of Review

This Court reviews the District Court's ruling on the Motion to Dismiss under a *de novo* standard of review. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d. Cir. 2009).

#### 2. Argument

##### i. The Trial Court Erred in Dismissing Count IV

###### a. District of Columbia Law Recognizes a Cause of Action for the Implied Covenant of Good Faith and Fair Dealing

The Trial Court erred in dismissing Count IV for Breach of the Implied Covenant of Good Faith & Fair Dealing, holding that "…there is no implied-covenant claim in D.C." because such a cause of action does in fact exist, as confirmed by well-established case law.

In dismissing Count IV with prejudice, the Trial Court cited to D.C. Code Section 28:1-304, cmt. 1; however, the Trial Court did not cite case law in support of its holding. A review of D.C. law, which is controlling in this action due to the absence of a generally accepted principle of Admiralty law, confirms that District of Columbia law recognizes claims for breach of the implied covenant of good faith and fair dealing. "The District of Columbia recognizes an independent cause of

action for a breach of the implied covenant of good faith." *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, No. CIV. 04-687 (RCL), 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006) (citing to *Allworth v. Howard University*, 890 A.2d 194, 201 (D.C. 2006)).

*C & E Services, Inc., v. Ashland Inc.*, 601 F.Supp.2d 262 (D.D.C. 2009), which Mr. Stokes cited to the District Court, further confirms the viability of this cause of action. *Ashland* held that liability lies for breach of said duty if a party (1) evades the spirit of the contract, (2) willfully renders imperfect performance, or (3) interferes with performance by the other party. *Id.* at 276. The Court's recitation of the elements of a cause of action confirms the existence of the cause of action, and establishes the District Court's error in finding that such a cause of action does not exist.

Other D.C. courts recognize that a claim for breach of the implied covenant exists and discussed how a litigant could state a claim for breach of the covenant. *Abdelrhman v. Ackerman*, 76 A.3d 883, 892 (D.C. 2014) ("To state claim for beach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious."). The *Abdelrhman* matter, in turn, quoted *Wright v. Howard University*, 60 A.3d 749, 756 (D.C. 2013), which also considered whether the plaintiff in that case had stated a claim for breach of implied covenant, again confirming that this cause of action is available to litigants such as

Mr. Stokes. Mr. Stokes' allegations meet the requirements to state a claim for breach of the implied covenant outlined in *Howard University*, and confirm that the District Court erred by dismissing Count IV with prejudice.

Federal case law from the District of Columbia also confirms the existence of a cause of action for the implied covenant of good faith and fair dealing. In *Jacobson v. Hofgard*, the Federal Court denied a motion to dismiss a standalone Count V for "Breach of Convent of Good Faith and Fair Dealing." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 208 (D.D.C. 2016) (holding that, "Defendants motion to dismiss Plaintiffs' claim of a breach of the covenant of good faith and fair dealing is denied."); *see also Mawakana v. Board of Trustees of the University of the District of Columbia*, 113 F. Supp. 3d 340, 355 (D.D.C. 2015) (recognizing a cause of action for Breach of Implied Covenant of Good Faith and Fair Dealing).

The *Mawakana* court recognized that a cause of action for Breach of Implied Covenant of Good Faith and Fair Dealing exists. The court included a specific section of its Opinion, Section III titled, "Plaintiff has alleged sufficient facts to state a plausible claim for breach of the implied covenant of good faith and fair dealing." *Id*. at 355. Mr. Stokes submits that he also satisfied the governing pleading standard, noting that just like Mr. Stokes' Complaint, the subject complaint in *Mawakana* featured a stand-alone count titled "Count Four (Breach of the Implied Covenant of Good Faith and Fair Dealing)." "*Id*. at 356 ("But since the Court finds that plaintiff

had adequately alleged the existence of an implied contract, it follows that plaintiff has plausibly alleged that defendant has violated the implied covenant of good faith and fair dealing that such a contract would contain. Accordingly, defendant's motion to dismiss Count IV will be denied.") (internal citation omitted).

Providing further support for Mr. Stokes' position, in opposition to the motion to dismiss and in support of his position that he properly asserted Count IV, Mr. Stokes relied upon *Levick v. Kiser*, 206 F. Supp. 3d 337 (D.D.C. 2016). As with other authority, the complaint in *Levick* featured a standalone Count V for "Breach of the Implied Covenant of Good Faith and Fair Dealing." When ruling on the motion to dismiss, the Court found that:

> "The allegations in support of the plaintiff's breach of the implied covenant of good faith and fair dealing claim, if true, plausibly show 'injury to the right of the plaintiff to receive the fruits of the contract' and 'bad faith.' *Abdelrhman*, 76 A. 3d at 891; cf. id. at 892 (affirming dismissal of plaintiff's complaint because defendant's 'alleged representation conformed to the terms of the contract' and thus it 'could not frustrate the plaintiffs' enjoyment of the benefits of the contract, nor could it fairly be characterized as … made in bad faith.'). Therefore, the plaintiff has stated a claim for breach of the implied covenant of good faith and fair dealing."

*Id*. at 346-347. This Court should find that the District Court erred by dismissing Count IV because D.C. law recognizes a cause of action for breach of the implied covenant of good faith and fair dealing.

**b. The Trial Court Later Foreclosed Mr. Stokes from Seeking in his Breach Action the Damages that Would Have Flowed from the Breach of Implied Covenant, Confirming That the**

## Breach of the Implied Covenant Cause of Action Was Properly Brought by Mr. Stokes

Because the District Court determined that a cause of action for breach of the implied covenant of good faith and fair dealing does not exist as a matter of law, it did not consider whether Appellant adequately plead his implied covenant claim. Had the Trial Court evaluated the allegations of said Count, it would have found them to be sufficient because Mr. Stokes has alleged the requisite arbitrary or capricious conduct necessary to sustain the cause of action.

Mr. Stokes' Complaint contained numerous factual allegations that demonstrated Appellee's alleged bad-faith conduct, and conduct that was malicious, arbitrary, or capricious, including, but not limited to that:

- "Defendant intentionally had possession of the Vessel as it advised the Vessel was a total loss and later took unlawful exercise of ownership, dominion, or control of Plaintiff's Vessel and personal property, in denial or repudiation of Plaintiff's rights thereto." (JA537, ¶ 49);

- "Defendant acted and confirmed coverage to Plaintiff, taking care, custody, and control of the Vessel as it was determined to be a total loss, and Plaintiff acted and relied upon these actions." (JA533, ¶ 22);

- "Defendant at all times had an ulterior motive in keeping the Vessel in Delaware: to conduct forum shopping and use the Vessel's location as evidence to support the transfer of the instant lawsuit to Delaware, take advantage of Plaintiff, and strong-arm negotiations as Plaintiff, his experts, and the Vessel manufacturer were far away from the Vessel." (JA546, ¶ 103);

- "Defendant retained custody and control of Plaintiff's damaged Vessel at a 'remote' marina of Defendant's choosing: Indian River Marina (located within Delaware Seashore State Park) not allowing Plaintiff to transport his Vessel and get necessary repairs." (JA 537, ¶ 53);

- "Plaintiff has been forced to retain his own team of inspectors, marine surveyors and experts, to refute Defendant's inspectors." (JA538, ¶ 57);

- "Defendant has forced three (3) formal inspections, has forced Plaintiff to hire experts, has forced indefinite storage of the damaged vessel, and has forced travel costs to remote locations." (JA 538, ¶58);

- "After having possession of the Vessel for several months following the loss, Plaintiff requested permission to move the Vessel from Delaware to Florida, where Plaintiff's experts and the Vessel's manufacturer all reside." (DJA 545, ¶ 100);

- Appellee intentionally failed to make a claim determination until 1,043 days after the submersion loss, evading the spirit of the contact which is to indemnify an insured for his loss and which was so extreme as to be willfully rendering imperfect performance. (JA548, ¶113);

- "Plaintiff filed a Notice of Civil Remedy as to Defendant's bad-faith actions on or about December 28, 2018, bearing filing number 47087. Said notice relates back to the initial filing of this lawsuit and of loss." (JA534, ¶ 35);

- "Plaintiff further sent multiple correspondence to the Delaware Insurance Commissioner, SCC Bureau of Insurance, and the Bureau of Financial Institutions, alerting them of Defendant's bad faith actions and breaches of the Policy." (JA535, ¶ 37);

- "Defendant attempted to reserve its rights, asserting several policy provisions which it *may* rely on to deny coverage, even

though the carrier had no reason to believe the Vessel would not be seaworthy." (JA548, ¶ 114);

- Defendant failed to send a licensed adjuster or other professional to properly and legitimately adjust, identify, and examine this maritime loss. (JA548, ¶ 115);

- "Defendant at all times had an ulterior motive in keeping the Vessel in Delaware: to conduct forum shopping and use the Vessel's location as evidence to support the transfer of the instant lawsuit to Delaware, take advantage of Plaintiff, and strong-arm negotiations as Plaintiff, his experts, and the Vessel manufacturer were far away from the Vessel." (JA546, ¶ 103);

- "…Defendant refused to allow Plaintiff to move the Vessel, threatening and misrepresenting that its removal would void coverage under the Policy and that the transportation would result in spoliation of evidence." (JA546, ¶101);

- "Defendant has wrongfully withheld the Vessel, failing to make a claim determination within a reasonable time period and preventing Plaintiff's possession as a result." (JA548, ¶ 117);

- "Defendant acted as if the loss was covered, prejudicing Plaintiff in giving the care, custody, and control of the Vessel to Defendant under the assumption that he would be indemnified for the loss." (JA548, ¶ 118);

- "Instead, Defendant reneged coverage and is now claiming that the loss is not covered under the Policy." (JA548, ¶ 118); and

- "Defendant disrupted the orderly sequence and time limits for indemnification as planned by the policy of insurance." (JA548, ¶ 120).

Applying D.C. law to the allegations of the Complaint, Mr. Stokes' claim for

extra-contractual, non-pecuniary and punitive damages for Appellee's wrongful and

intentional breach of the implied covenant of good faith and fair dealing are recoverable as a matter of law and Mr. Stokes seeks reversal so that he may pursue his damages. *Cont'l Ins. Co. v. Lynham*, 293 A.2d 481, 483 (D.C.1972), held that "It is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fee [sic] based on vexatious refusal to pay." Noting that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fees, the allegations of the Complaint show the necessary malicious and wanton conduct necessary for Mr. Stokes to plead his claim and that Mr. Stokes must be permitted the opportunity to pursue said claim.

After trial, the District Court held that:

"[Mr. Stokes] complaint leveled a host of claims against Markel that rested on accusing it of bad faith. D.I. 194 at 8. If those claims had succeeded, they might have opened the door to fees under admiralty or DC law. But I dismissed them all, and Markel [sic] prevailed only on a run-of-the-mill claim for breach of contract." D.I. 196 at 7.

This statement by the Trial Court in the post-trial posture shows the impossible position that Mr. Stokes was placed in. On the one hand, his Count for Breach of Implied Covenant was dismissed with prejudice because Mr. Stokes could seek all damages flowing from the cause of action in the breach action. On the other hand, the Trial Court acknowledged that damages, including attorney's fees, sounded

in "bad faith" and that Mr. Stokes "might have" been able to pursue damages such as attorney's fees if only the "bad faith" claim had survived. Mr. Stokes, having the power of a Jury Verdict in his favor in the amount of $646,000.00, should be permitted to pursue the claim so that he may be made whole, including a recovery attorney's fees *Cont'l Ins. Co. v. Lynham*, 293 A.2d 481, 483 (D.C.1972), Absent reversal, Mr. Stokes is deprived of precisely that opportunity.

The contradictory rationale of the Trial Court shows why reversal is necessary – so that Mr. Stokes may recover those damages that the Trial Court initially said would be encompassed within the Breach of Contract action, but later acknowledged could not possibly be recovered through the Breach action. The Trial Court's ruling also failed to account for Mr. Stokes' allegation that, "Plaintiff suffered damages as a result of Defendant's Breach of Implied Covenant of Good Faith & Fair Dealing which are separate and apart from the damages discussed in Count I – Breach of Contract, and the claims are not duplicative." (JA549, ¶ 123.)

Mr. Stokes' damages as properly alleged in the Complaint include the attorney's fees that he was forced to incur in prosecuting this action. Mr. Stokes' Complaint also alleged that:

- "Plaintiff has incurred costs related to storage, preservation, and winterization/upkeep of the damaged Vessel" (JA538, , ¶ 58);

- "Plaintiff has incurred other extra-contractual damages due to Defendant's actions, including but not limited to loss of use and

enjoyment of the Vessel, loss of the ability to sell the Vessel, and interest on the loan encumbering the Vessel" (JA538, ¶ 59);

In the District of Columbia, "[w]here the basis of a complaint is ... a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious." *Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 12 (D.D.C. 2007). The exception to the general prohibition on punitive damages for contract claims applies where the breach of contract merges with an independent, recognized tort, such as intentional inflection of emotional distress or fraud.[1] *Fireman's Fund Ins. Co.*, 480 F. Supp. 2d at 12; *see, e.g.*, *Allen v. Yates,* 870 A.2d 39, 49 (D.C.2005) (cautioning, in case where "claims of fraud and of fraudulent transfer are closely related to the breach of the underlying contract," that upon

---

[1] The District of Columbia has made an exception to this general prohibition in *Cent. Armature Works, Inc. v. Am. Motorists Ins. Co.*, 520 F.Supp. 283 (D.D.C.1981). In *Cent. Armature Works*, the district court held that an insurer could be liable for punitive damages on a contract action for failure to defend "even if its conduct did not amount to fraud or misrepresentation" because, under D.C. law, the relationship between an insurer and its insured is "subject ... to more stringent standards of conduct than those normally imposed on parties to a contract.*" Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 13–14 (D.D.C. 2007) (citing *Cent. Armature Works, Inc. v. Am. Motorists Ins. Co.*, 520 F. Supp. 283 (D.D.C.1981)). *In Cont'l Ins. Co. v. Lynham*, 293 A.2d 481 (D.C.1972), the district court stated: "It is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fee [sic] based on vexatious refusal to pay." *Lynha*m, 293 A.2d at 483; *see also Cent. Armature Works*, 520 F. Supp. at 292 (noting that "[n]either party has presented any authority from the District of Columbia which establishes the relationship between an insurer and its insured," but that "[s]ome indication that insurers have additional obligations appears in [*Lynham* ]"). *Fireman's Fund Ins. Co. v. CTIA*, 480 F. Supp. 2d 7, 13–14 (D.D.C. 2007).

remand, an "*intentional* breach of contract[,] i.e., a breach allegedly accompanied by a bad motive and by deceptive conduct, would sustain an award of punitive damages only if the breaching party's conduct assumes the character of a willful tort").

Mr. Stokes alleged that Appellee violated the implied covenant of good faith and fair dealing in its insurance contract with Mr. Stokes by *intentionally* subjecting Mr. Stokes to an unfair, arbitrary, capricious, and malicious investigative process and procedures, wrongfully refusing Mr. Stokes access to his Vessel or to transport his Vessel, willfully misrepresenting to Mr. Stokes that removal of his Vessel would void coverage under the Policy, asserting that transporting the Vessel would result in spoliation of evidence, not properly adjusting the loss in accordance with law, intentionally refusing to timely and properly investigate the loss, and intentionally and deceptively acting as if the loss was covered to improperly take custody and control of the Vessel under the false pretense that Appellee would pay the damages as a total loss.

This includes the allegations that:

- "Defendant retained custody and control of Plaintiff's damaged Vessel at a 'remote' marina of Defendant's choosing: Indian River Marina (located within Delaware Seashore State Park) not allowing Plaintiff to transport his Vessel and get necessary repairs." (JA537, ¶ 53);

- "Plaintiff has been forced to retain his own team of inspectors, marine surveyors and experts, to refute Defendant's inspectors." (JA538, ¶ 57);

- "Defendant has forced three (3) formal inspections, has forced Plaintiff to hire experts, has forced indefinite storage of the damaged vessel, and has forced travel costs to remote locations." (JA538, ¶ 58);

- "Defendant's conduct shows that it had either actual knowledge of the wrongfulness of the conduct and the high probability that damage to the claimants would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in damage." (JA549, ¶ 125); and

  "During its investigation and adjustment of the subject insurance claim, Defendant committed a multitude of willful and tortious violations of D.C. law; namely, committing multiple violations of unfair, deceptive, and unconscionable business practices." (JA553, ¶ 144).

Under the governing policy Markel would have been entitled to maintain possession of the Vessel only if it paid for the Vessel as a total loss (A10). Markel staunchly defended its failure to pay for the claim, however, asserting that the Vessel loss was not covered all the way through trial. Markel also contested the value of Mr. Stokes' damages and refused to acknowledge the Vessel was a total loss until just before trial.

In support of his Count for Conversion, Mr. Stokes alleged that, "[a]fter Defendant's inspections of the Vessel, Defendant illegally assumed ownership, care, custody, and control over the damaged Vessel, refusing to allow Plaintiff access to the Vessel and personal property and to transport his Vessel out of the marina housing the Vessel to a location more suitable to Plaintiff." (JA533, ¶26.)

Markel admitted that it failed to render a coverage determination relative to this loss which occurred on October 11, 2018 (JA532, ¶15) , until August 19, 2021. (JA693(where Markel states that, "On August 19, 2021, after finalizing its investigation, MAIC issued a formal Notice of Disclaimer of Coverage to Plaintiff.").) This means that while maintaining possession of Mr. Stokes' Vessel, Markel refused to issue a formal coverage determination for a period of One Thousand and Forty-Three (1,043) days. This malicious behavior is one of a number of facts that the Trial Court precluded Mr. Stokes from asserting as bad faith in the breach action, confirming the necessity of reversal, so that Mr. Stokes may seek recovery for all of his damages.

Mr. Stokes also properly alleged that, "[a]fter [Appellee's] having possession of the Vessel for several months following the loss, Plaintiff requested permission to move the Vessel from Delaware to Florida, where Plaintiff's experts and the Vessel's manufacturer all reside." (JA545, ¶ 100.) This would have allowed the manufacturer access to the Vessel for repairs and, importantly, to inspect the Vessel relative to Appellee's defense of "design defect." By improperly keeping possession of the Vessel in a remote location, Appellee intentionally precluded Mr. Stokes from repairing the Vessel which precluding him from selling the same and made inspections prohibitively costly.

Mr. Stokes alleged that Appellee engaged in *intentionally deceptive conduct* to conceal its ulterior *bad motive* in keeping the Vessel in Delaware to conduct forum shopping and to use the Vessel's location as evidence to support the transfer of the instant lawsuit to Delaware. Mr. Stokes' Count IV for Breach of Implied Covenant of Good Faith and Fair Dealing should not have been dismissed with prejudice.

D.C. law is well settled that a party may proceed under a cause of action for breach of the implied covenant of good faith and fair dealing when, as here, it is an independent cause of action with allegations and damages that are not identical to other claims for relief. *WMATA v. Quik Serve Foods, Inc.*, No. 04-cv-0687, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006). "[T]he implied covenant may not override the express provisions of the contract." *Id. Burks Companies, Inc. v. Howard Univ.*, No. CV 16-2312 (DLF), 2018 WL 4193640, at *10 (D.D.C. May 9, 2018).

The allegations of Count IV are starkly different than those of the Breach of Contract Action, the Breach action being the only cause of action that remained after the Court dismissed Count IV. Reversal is necessary due to the Trial Court's contradictory rulings that on the one hand, found that Mr. Stokes could not pursue this Count because he could properly pursue his damages under his breach of contract action, while on the other hand, disallowing this evidence of damages resulting from Markel's vexatious conduct from being introduced at Trial and only

allowed Mr. Stokes to seek the value of his Vessel as determined by the policy at Trial.

### ii.    The Trial Court Erred in Dismissing Count III for Conversion

Mr. Stokes seeks reversal of the dismissal, with prejudice, of Count III of the Complaint for Conversion.

### a. The Factual Basis of Dismissal Included That The Vessel Was a Total Loss, This Fact Remained Contested Until Markel Finally Stipulated to Total Loss Shortly Before Trial

The rationale of the Trial Court within its Order of Dismissal of Count III of the Complaint for Conversion included that:

> "Markel never would have had Stokes's boat but for the contractual relationship. In saying that Markel was initially within its rights to take the boat and act as if it were a total loss, Stokes is presumably referring to ¶ 2(b) of the contract's "PHYSICAL DAMAGE" section. That paragraph gives Markel the right to take title and possession of the remains of a boat for which it paid the contractual maximum coverage – in other words, a total loss. (D.I. 130-1 at 12; *cf.* D.I. 130-1 at 2; D.I. 141 at 9-10.) **Markel had no contractual right to take possession of a boat that was not a total loss**." (A10(emphasis added).)

Mr. Stokes emphasizes the Trial Court's language regarding total loss because, at the time of the ruling on the Motion to Dismiss, Markel had not expressly stated or stipulated that the Vessel was a total loss and in fact, did not do so until shortly before Trial, on January 22, 2025. (JA637.) Mr. Stokes notes that his Complaint had also alleged that, "Plaintiff's claims for conversion are separate and distinct from any claims or allegations for breach of contract and involve separate and distinct

damages." (JA530, ¶ 107.) But, the Trial Court did not accept the allegations of the Complaint as true when it found that the damages could be pursued in the breach action.

The Complaint alleged that Markel initially agreed that the damage to the Vessel was a total loss before Markel changed course and denied the claim, confirming that Markel did not have authority pursuant to the policy to possess the Vessel as it failed to pay for a total loss. Importantly, Markel's failure to acknowledge that the Vessel loss was a total loss continued until the eve of trial. (JA623, Oral Order, (stating that, "I ORDER counsel to confer and try to reach a stipulation about whether the boat's sinking constituted a total loss. I encourage counsel to submit this stipulation by 5 pm on January 22.").)

Further confirming that Appellee disputed that the Vessel was a total loss at the time of the motion to dismiss ruling, Appellee's subsequent answer stated "Denied" (DI. 146 at 3, ¶ 22) in response to Mr. Stokes' allegation that, "Defendant acted and confirmed coverage to Plaintiff, taking care, custody and control of the Vessel as it was determined to be a total loss, and Plaintiff acted and relied upon these actions." (JA560, ¶ 22). Thus, Appellee not only disputed whether the Vessel suffered a total loss; it continued to contest coverage, even presenting its defenses of no coverage to the jury. (JA641, Verdict Form (confirming that Appellee defended against coverage up to and during Trial).) In post-trial motion practice, Appellee

confirmed its denial of the claim. (JA692(asserting that "Plaintiff also repeats his previously rejected assertion that MAIC 'initially acknowledge[ed] coverage for loss.' *Id.* To quote that Court: 'MAIC has never admitted the loss is covered.' D.I. 121, at 29."). The staunch defense against coverage also included Appellee identifying an expert witness[2] to testify regarding damages on its behalf (JA644) and retaining an expert to evaluate the Vessel who prepared an eighty-one (81) page report in support of Appellee's valuation of damages.

Markel belatedly stipulated that the damages to the Vessel constituted a total loss very shortly before trial. (JA637, Appellee's Letter to the trial judge, (stating that, "Defendant proposes the following language as to the damages at issue: 'The Parties agree that the cost to repair the vessel would be more than the insurance policy limit and that there is no current value beyond a residual salvage value: therefore Plaintiff's damages, if any, would be $646,000 (Policy Limit of $680,000 minus $34,000 deductible.'").) Markel's statement does not, however, represent a stipulation as to total loss under the policy that could defeat a conversion claim because Appellee continued to contest coverage. Thus, even when Appellee finally stipulated that the Vessel was a total loss, it still refused to pay for the damage, precluding it from asserting a right under the policy to take possession of the Vessel, a right that the Trial Court found "gives Markel the right to take title and possession

---

[2] Mr. Matthew Schmahal.

of the remains of a boat for **which it paid the contractual maximum coverage**."
(A10 (emphasis added).)

Markel forced Mr. Stokes to go to trial to secure a jury verdict in his favor before it paid Mr. Stokes the amount of the total loss. (JA641, Verdict Form (confirming that Appellee defended against coverage up to and during trial).) This fact contradicts the Trial Court's rationale in dismissing Count III with prejudice, further confirming that Markel was not entitled to take possession of Mr. Stokes' Vessel. Although Mr. Stokes maintained that Appellee should have paid him for a total loss early on in the claims process and all the way through trial, including at the time of the ruling on the motion to dismiss, Markel refused to pay for the Vessel as a total loss because Markel contested coverage. Markel's failure to pay the loss was a breach of the policy that precluded the Trial Court from dismissing Mr. Stokes' conversion claim based upon a finding of that the policy entitled Markel to possess the Vessel after Markel pays a total loss. This Court should reverse the Trial Court's dismissal of Count III.

### b. Dismissal Also Relied on The Finding That Mr. Stokes Could Pursue His Conversion Damages in the Breach Action; However, at Trial the Trial Court Limited Mr. Stokes' Damages to Only the Value of the Insured Vessel

The Trial Court's stated rationale for dismissing Count III with prejudice also included the finding that, "Stokes will be able to address this alleged wrongdoing in his breach-of-contract claim, as explained below." (A11.) But when the parties ultimately presented Mr. Stokes' breach of contract claim to the jury, the Trial Court prohibited Mr. Stokes from seeking damages in excess of the value of the Vessel. When the Trial Court limited Mr. Stokes' damages, in advance of trial, to only the value of the Vessel, it undermined its finding in support of dismissal – that Mr. Stokes would be permitted to "address this alleged wrongdoing in his breach-of-contract claim." (*Id.*) Mr. Stokes was not permitted to address this wrongdoing because the amount of damages in the breach action was limited to the "stipulated amount" of $646,000.00 (JA678) – which represents the total loss value of the Vessel pursuant to the contractually-provided limits of the subject Vessel insurance policy. Thus, the Trial Court's damages rulings conflict with the rationale of its ruling on the motion to dismiss and justify reversal of the Trial Court to allow Mr. Stokes to pursue his Conversion claim.

### iii. Mr. Stokes Contests Dismissal with Prejudice of Counts of His Amended Complaint

Mr. Stokes respectfully seeks reversal of the Trial Court's dismissal with prejudice of his Amended Complaint, including Count III for Conversion, Count V for Breach of D.C. Code Section 31-2231.17 Unfair Claim Settlement Practices, Count IV for Breach of Implied Covenant, VI of the Complaint for Breach of the Consumer Protection Procedures Act, and Count VII for Fraudulent Inducement.

With respect to Count IV, even if the District Court did not agree that the cause of action was properly pled under Rule 12(b)(6), the District Court should have dismissed without prejudice because Mr. Stokes had not previously alleged the cause of action under D.C. law. (JA499.) The dismissal of Mr. Stokes' claim with prejudice deprived Mr. Stokes of the opportunity for a determination of the merits of the claim. The Trial Court could have just as easily dismissed without prejudice and required Mr. Stokes to seek leave to amend to bring the cause of action in the future. Such a ruling would have disposed of the action before the Trial Court without foreclosing Mr. Stokes from ever bringing the cause of action in this action or a future action, allowing Mr. Stokes to preserve the right to recover damages pursuant to same.

Dismissal without prejudice would have allowed for the opportunity Mr. Stokes to bring the claim in the future after a successful resolution in Mr. Stokes' favor of his Breach-of Contract Action, because a successful resolution of the breach action would tend to make such a claim more viable. Dismissal without prejudice

would have ensured that Mr. Stokes was not deprived of the opportunity to strengthen his claim by alleging a successful jury verdict in his favor, as did ultimately occur.

With respect to Count V, the Trial Court ruled that there is no such cause of action, in reliance on *Choratis v. State Farm Fire & Casualty*, 961 A.2d 1080 (D.C. 2008). Mr. Stokes asserts that *Chohartis* stands for the much narrower proposition that the District of Columbia does not have a first-party bad faith cause of action. Instead of offering some expansive, blanket ruling that tort claims may not arise out of contractual relationships, *Chohartis* stands for the mere proposition that there is no first-party bad faith action in the District of Columbia for an insurer's failure to provide covered insurance claims. *Id.* at 1087. *Chohartis* expressly stated that the Court was not excluding tort claims against insurers. *Id.* at 1088. The Trial Court's ruling insulates insurance companies such as Appellee from any tort liability in the handling of policy claims made by their insureds. Such an interpretation goes too far and Mr. Stokes seeks reversal so that he may pursue the full balance of his damages.

At the pleading stage and when facing a motion to dismiss, a complaint that contains "general factual allegations of injury resulting from the defendant's conduct may suffice"; a motion to dismiss "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Grayson v. AT & T Corp.*, 15

A.3d 219, 245–46 (D.C. 2011). Mr. Stokes satisfied the governing pleading standard such that dismissal with prejudice was error.

With respect to Count VI, the Trial Court's Order acknowledged that, "Ordinarily, I would dismiss without prejudice" (A13); however, the Trial Court dismissed with prejudice because "Stokes was thus on notice that he had a high bar to clear in re-arguing fraud." *Id*. But, the "high bar" is present within the pleading standard itself, and the Trial Court's finding that Mr. Stokes failed to meet the pleading standard did not present the appropriate basis to dismiss the Count with prejudice. The Court should have provided Mr. Stokes an opportunity to amend rather than dismiss with prejudice to ensure the best opportunity for resolution on the merits.

As it relates to the dismissal with prejudice of Count III, VI, and Count VII, dismissal with prejudice deprived Mr. Stokes of the opportunity to seek an adjudication on the merits of said Counts, which is inconsistent with the jurisprudential preference of the United States Court of Appeals, District of Columbia Circuit, for adjudication of cases on their merits rather than on the basis of formalities." *Ciralsky v. C.I.A.*, 355 F.3d 661, 674 (D.C. Cir. 2004). Within the same case, the District of Columbia Circuit, quoted the United State Supreme Court when acknowledging that the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and

accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Id.* To ensure that the opportunity for resolution on the merits was not extinguished prematurely, the Trial Court should have dismissed without prejudice, either granting leave to amend or requiring Mr. Stokes to seek leave to amend if he sought to revive the Counts.

### B. Mr. Stokes Seeks Reversal of the Trial Court's Award of Pre-Judgment Interest

#### 1. Standard of Review

This Court reviews the Trial Court's ruling on pre-judgment interest on an abuse of discretion standard. *In re Frescati Shipping Co.*, 886 F. 3d 291, 314 (3d Cir. 2018), *aff'd sub nom.*

#### 2. Argument

Mr. Stokes agrees with the Trial Court that, "In admiralty cases, courts in this circuit have discretion to choose the rate of pre-judgment interest that they consider proper. *In re Frescati Shipping Co.*, 886 F.3d 291, 314 (3d Cir. 2018), *aff'd sub nom.*" (D.I. 196, at 3.) Mr. Stokes respectfully disagrees with the interest figure awarded by the Trial Court – "2.54%, compounded at three-month intervals starting October 12, 2018." (A19)

Mr. Stokes asserts that the Trial Court should have awarded a higher interest rate based upon the facts and circumstances of the case, in reliance on *Matter of Bankers Trust Co.*, 658 F. 2d 103, 108 (3d Cir. 1981) which confirms that the purpose

of prejudgment interest is to reimburse a party for the loss of use of its investment or funds. Applying *Bankers Trust Co.* to the facts of our case supports the award of a higher rate of interest. Before the Trial Court, Mr. Stokes properly sought the interest rate set by Delaware law, which the Trial Court noted "is the Federal Reserve discount rate plus 5 percentage points." (A18.) But, the Trial Court declined to award Delaware's standard legal rate of interest because "depending on when that rate is measured, it would either double or triple the rate calculated above, lavishing a premium on Stokes far above the risk-free return that he would have earned if he had been paid when his boat sank." (A18.) The Trial Court's reference to the a "risk-free return" refers to the 2.54% figure noted *supra*. In support of reversal, *Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977), held that, "it was not an abuse of discretion for the district judge to award interest at a rate equivalent to the injured party's cost of borrowing, even though this rate was greater than the prevailing statutory rate." As courts may properly apply the facts of a case when awarding an interest calculation, Mr. Stokes contests the Trial Court's award of interest because to award Mr. Stokes a rate higher than 2.54% would not have lavished a premium on Mr. Stokes. Instead, consistent with *Bankers Trust Co.* and *Vulcan*, in this case where Mr. Stokes properly alleged before the Trial Court that Mr. Stokes was subject to "interest on the loan encumbering the Vessel." (JA546, , ¶106.), a higher rate of interest would have helped make Mr. Stokes whole. Mr. Stokes also properly raised

28

the matter of his loan when seeking interest. (JA682 (asserting that Appellee, "has improperly withheld [Mr. Stokes'] money for more than six years, a time in which the market made very high returns. Mr. Stokes was forced to continue paying insurance and the loan on his boat despite not being able to use the boat because [Appellee] would not release it to allow for repairs.").

As Mr. Stokes briefed before the Trial Court, to award his requested rate "would put the rate of pre-judgment interest at 7.75% which helps meet the goal of making Mr. Stokes whole, as he has waited nearly six years from the date of the loss to the date of the Judgment." (JA683.) This was approximately the rate of Mr. Stokes' loan. Thus, it is respectfully asserted that the Trial Court erred and abused its discretion in applying a 2.54% pre-judgment interest rate, when the Trial Court was aware that throughout the duration of the case, Mr. Stokes was paying interest on a loan for a Vessel that he could not utilize. The 2.54% rate awarded only provided for a risk-free return, without accounting for Mr. Stokes' vessel-related expenses, expenses accruing relative to a vessel that he could not utilize for the duration of this litigation.

If the Trial Court did not wish to utilize the 7.75% figure pursued by Mr. Stokes, it is respectfully asserted that it should have utilized its discretion to enter an award of interest that exceeds the lowest amount of a "risk free" rate of return, by virtue of the briefing which informed the Trial Court of the interest that accrued on

Mr. Stokes' Vessel loan, a figure which could not be reasonably interpreted to be at or below the 2.54% figure awarded by the Trial Court.

## VII.  Conclusion

It is respectfully asserted that the Trial Court must be reversed.

Dated: December 15, 2025

**BAYARD, P.A.**

*Of Counsel*:

 */s/ Stephen B. Brauerman*

John Wynn*
**NEBLETT LAW GROUP**
2550 S. Bayshore Dr., Suite 211
Miami, FL 33133
(305) 456-0445
jack@neblettlaw.com

Stephen B. Brauerman (#4952)
600 N. King St., Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Counsel for Appellant*
*James Stokes*

*admission *pro hac vice* forthcoming

## COMBINED CERTIFICATIONS

## CERTIFICATE OF BAR MEMBERSHIP

I, Stephen B. Brauerman, am duly admitted to practice law before the United States Court of Appeals for the Third Circuit.

*/s/Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
BAYARD, P.A.

*Counsel for Appellant James Stokes*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)

1.    This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,396 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman.

*/s/Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
BAYARD, P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, the foregoing document was filed electronically with the Clerk of the United States Court of Appeals for the Third Circuit using the CM/ECF system. Counsel for the other parties are registered CM/ECF users and will be served by the Court's Notice of Docketing Activity.

> */s/Stephen B. Brauerman*
> Stephen B. Brauerman (#4952)
> BAYARD, P.A.

**CERTIFICATE OF IDENTICAL COMPLIANCE BRIEFS**

I, Stephen B. Brauerman, hereby certify that the paper copies of this brief are identical to one another and to the electronically filed PDF version.

> */s/Stephen B. Brauerman*
> Stephen B. Brauerman (#4952)
> BAYARD, P.A.

**CERTIFICATE OF VIRUS DETECTION PROGRAM**

I, Stephen B. Brauerman, hereby certify that a Microsoft Defender has been run on the brief and no virus was detected. The version of the virus detection program used was 1.437.1.0.

> */s/Stephen B. Brauerman*
> Stephen B. Brauerman (#4952)
> BAYARD, P.A.